PORTFOLIO ACQUISITIONS, L.L.C., Plaintiff-Appellant, v. RANDY FELTMAN, Defendant-Appellee.

First District (3rd Division)   No. 1—07—3004

Opinion filed May 20, 2009.

Mark Johnson, of Blatt, Hasenmiller, Leibsker & Moore, LLC, and McGuireWoods, LLP, both of Chicago, for appellant.

James Shedden, Tony Kim, and Katherine A. Hathaway, all of Schad, Diamond & Shedden, P.C., of Chicago, for appellee.

David M. Schultz, of Hinshaw & Culbertson, LLP, of Chicago, and Barbara Sinsley, of Barron, Newburger, Sinsley & Weir PLLC, of Lutz, Florida, for *amici curiae* DBA International and National Association of Retail Collections Attorneys.

Deborah Zuckerman, Julie Nepveu, and Michael Schuster, all of AARP Foundation, of Washington, D.C., *amicus curiae*.

Michelle A. Weinberg, of Legal Assistance Foundation of Metropolitan Chicago, of Chicago, *amicus curiae*.

Daniel A. Edelman, Cathleen M. Combs, and James O. Latturner, all of Edelman, Combs, Latturner & Goodwin, LLC, of Chicago, for *amicus curiae* National Association of Consumer.

PRESIDING JUSTICE MURPHY delivered the opinion of the court:

This case is before this court on plaintiff's appeal of the trial court's order granting defendant's motion to dismiss plaintiff's second amended complaint with prejudice pursuant to section 2—619(a)(5) of the Code of Civil Procedure. 735 ILCS 5/2—619(a)(5) (West 2006). On June 28, 2005, plaintiff filed its initial complaint against defendant to collect on an alleged defaulted credit card debt. Following the trial court's dismissal, with leave to amend, of plaintiff's complaint and first amended complaint, plaintiff filed its second amended complaint on March 9, 2007. The trial court agreed with defendant that plaintiff had failed to plead a viable breach of contract case based on a written contract and that it also failed to file its complaint within the five-year statute of limitations for accounts stated. 735 ILCS 5/13—205 (West 2006). Accordingly, the trial court granted defendant's motion to dismiss the second amended complaint under section 2—619(a)(5).

On appeal, plaintiff argues that the trial court improperly based its order on the finding that the 5-year and not the 10-year statute of limitations applied to its cause of action. See 735 ILCS 5/13—205, 13—206 (West 2006). Plaintiff asserts that it is well entrenched in Illinois law that the statute of limitations for an action on a credit card debt is 10 years. Plaintiff argues that the documents it presented at trial were sufficient to be considered evidence of a written contract or other evidence of indebtedness in writing. Plaintiff also argues that this court may follow the composite document theory to prove the existence of a written agreement. For the following reasons, we affirm the findings of the trial court.

## I. BACKGROUND

Plaintiff, Portfolio Acquisitions, L.L.C., is a debt buyer and collector. As a matter of background, the debt collection business has grown

to the point of $110 billion of bad debt purchases in 2007. Often, these debts have been transferred between several creditors and eventually written-off to be sold for pennies on the dollar to debt collection agencies. In Illinois, millions of these bad debts have been purchased by these debt collection agencies. *Amici* for defendant estimate that roughly more than half of the 158,152 debt collection lawsuits filed in Cook County in 2007 were filed on behalf of debt collection agencies, primarily for credit card debts. Because these debts often are transferred multiple times, *amici* for defendant express their concern that, despite the use of computers and sophisticated software, the odds drastically increase that documents will be lost and errors will result. They assert that this concern is compounded by the sheer volume of cases, which precludes careful examination for inconsistencies and inadequate documentation.

In the matter at hand, on or about June 18, 1994, defendant allegedly applied for a MasterCard credit card account with Prudential Bank. GE Select originally serviced the account until it was transferred to Direct Merchants Credit Card Bank (Direct Merchants) in September 1999. On or about March 30, 2005, the account was assigned from Direct Merchants to Metris Companies, Inc., which assigned it to OSI Portfolio Services, Inc., which finally assigned the account to plaintiff. Plaintiff then placed the account with the law offices of Blatt, Hasenmiller, Leibsker and Moore, LLC, for the purpose of collecting the debt allegedly defaulted on in 1999.

On June 28, 2005, plaintiff filed its complaint against defendant alleging that defendant had opened a charge account with GE Capital Consumer Card Company, agreeing to make payments as required by the charge agreement for any purchases made. Plaintiff asserted that, as assignee of the account, defendant was in default of the balance of $6,324.96 on the account. Defendant filed a combined motion to dismiss the complaint under section 2—619.1 of the Code of Civil Procedure. 735 ILCS 5/2—619.1 (West 2006).

Defendant attached an affidavit to her motion testifying that she first learned of this account via a telephone call in 2005 and disputed the charges. Defendant claimed that she never received written notification of the debt or opportunity to dispute the debt. Defendant argued that the complaint be dismissed pursuant to section 2—615 for plaintiff's failure to attach a copy of the written instrument to the complaint and under section 2—619(a)(9) for plaintiff's alleged failure to comply with section 1692g(a) of the Fair Debt Collection Practices Act (15 U.S.C. §1692g(a) (2006)). The trial court denied the motion as to section 2—619, but granted it pursuant to section 2—615, with leave to amend, for plaintiff's failure to attach a copy of the written instrument.

Plaintiff filed an amended complaint on July 25, 2006, based on an account stated theory. The trial court again granted defendant's motion to dismiss, finding that the account stated claim was barred by the five-year statute of limitations. Plaintiff filed its second amended complaint on March 9, 2007. Plaintiff did not identify a specific cause of action, but pled that defendant applied for a credit card, agreed to pay for amounts charged, but failed to make required payments. Plaintiff alleged that this resulted in a debt including late payments and interest, of $6,324.96 on the account. Plaintiff attached a copy of a signed application dated July 14, 1994, to Prudential Bank for the MasterCard account as well as copies of cardholder agreements from Direct Merchants dated August 1998 and April 1999. In addition, plaintiff attached account statements issued from GE Select and Direct Merchants dated between July 24, 1999, and April 26, 2000, that indicated the last payment or charge date on the account was November 26, 1999.

Defendant again filed a motion to dismiss pursuant to section 2—619(a)(5) of the Illinois Code of Civil Procedure. 735 ILCS 5/2—619(a)(5) (West 2006). Defendant argued that the documents plaintiff attached to the second amended complaint did not constitute a written contract or other evidence of indebtedness in writing. Therefore, defendant concluded that the complaint was barred by the five-year statute of limitations because the last activity on the account occurred over five years from the date the lawsuit was filed, June 28, 2005.

The trial court found that plaintiff had failed to show the existence of a written contract and granted the motion to dismiss. In denying plaintiff's motion to reconsider, the trial court concluded:

"I think that what you're doing is trying to back into a ten-year statute of limitations with a cause of action based upon an alleged debt from the use of a credit card. I don't think you've pled a cause of action giving rise to a ten-year statute of limitations in which we would need a written contract.

Everything must be ascertained from that written instrument. If you need to refer to anything outside of that document or parole evidence, the contract is considered oral and the five-year statute of limitations will apply. I don't think you pled a viable breach for written contract."

## II. ANALYSIS

Section 2—619 of the Code of Civil Procedure allows a party to move for summary disposition of issues of law or easily proved issues of fact. *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116-17 (1993). Such a motion admits the legal sufficiency of the complaint but raises defects, defenses or other affirmative matter ap-

pearing on the face of the complaint which defeat the plaintiff's claim. *Joseph v. Chicago Transit Authority*, 306 Ill. App. 3d 927, 930 (1999). This court, under a *de novo* standard of review, must determine whether a material issue of fact should have precluded dismissal or, absent a question of fact, whether the dismissal was proper as a matter of law. *Kedzie & 103rd Currency Exchange, Inc.*, 156 Ill. 2d at 116-17. This court may uphold a trial court's decision on any basis appearing in the record. *Arangold Corp. v. Zehnder*, 187 Ill. 2d 341, 359-60 (1999).

■ ■ For purposes of this appeal, there is no dispute that the use of a credit card constitutes a contractual obligation or that the contract alleged by plaintiff exists. The resolution of this case hinges on the determination of whether the alleged contract is oral and the 5-year limitation period of section 13—205 applies or if it is a written contract and the 10-year limitation period of section 13—206 applies. Section 13—205 provides, in pertinent part:

"[A]ctions on unwritten contracts, expressed or implied, or on awards of arbitration, or to recover damages for an injury done to property, real or personal, or to recover the possession of personal property or damages for the detention or conversion thereof, and all civil actions not otherwise provided for, shall be commenced within 5 years next after the cause of action accrued." 735 ILCS 5/13—205 (West 2006).

Section 13—206, which provides for a 10-year statute of limitations, provides, in pertinent part:

"Except as provided in Section 2—725 of the 'Uniform Commercial Code', actions on bonds, promissory notes, bills of exchange, written leases, written contracts, or other evidences of indebtedness in writing, shall be commenced within 10 years next after the cause of action accrued; but if any payment or new promise to pay has been made, in writing, on any bond, note, bill, lease, contract, or other written evidence of indebtedness, within or after the period of 10 years, then an action may be commenced thereon at any time within 10 years after the time of such payment or promise to pay." 735 ILCS 5/13—206 (West 2006).

■ Illinois courts follow a strict interpretation of the meaning of a written agreement for purposes of the statute of limitations. *Brown v. Goodman*, 147 Ill. App. 3d 935, 939 (1986). A contract will only be deemed written if parties are identified and all the essential terms are in writing and ascertainable from the instrument itself. If resort to parol evidence is necessary to identify the parties or essential terms, the contract is considered an oral contract for purposes of the statute of limitations. *Brown*, 147 Ill. App. 3d at 939.

As detailed above, the trial court determined that the limitations period of section 13—205 applied to the instant action because plaintiff failed to plead a cause of action involving a written contract. Plaintiff argued that Illinois law has clearly established that the 10-year limitations period applies to an action to recover a debt on a defaulted credit card. In order to resolve this issue, we must examine the nature of credit card agreements and whether a claim for defaulted credit card debt involves a written or oral agreement or other evidence of indebtedness in writing.

## A. The Nature of the Credit Card Agreement and Transactions

Plaintiff argues that the trial court erred in its interpretation of *Harris Trust & Savings Bank v. McCray*, 21 Ill. App. 3d 605 (1974), the seminal opinion on the issue of the nature of an action on a credit card debt. As noted by *amici* on behalf of plaintiff, the *Harris Trust* opinion has received extensive treatment from many states addressing this issue. Before discussion of the holding of *Harris Trust* and related cases, the *Harris Trust* court opinion's able outline of the unique nature of this type of transaction follows:

> "The bank credit card system involves a tripartite relationship between the issuer bank, the cardholder, and merchants participating in the system. The issuer bank establishes an account on behalf of the person to whom the card is issued, and the two parties enter into an agreement which governs their relationship. This agreement provides that the bank will pay for cardholder's account the amount of merchandise or services purchased through the use of the credit card and will also make cash loans available to the cardholder. It also states that the cardholder shall be liable to the bank for advances and payments made by the bank and that the cardholder's obligation to pay the bank shall not be affected or impaired by any dispute, claim or demand by the cardholder with respect to any merchandise or service purchased.
>
> The merchants participating in the system agree to honor the bank's credit cards. The bank irrevocably agrees to honor and pay the sales slips presented by the merchant if the merchant performs his undertakings, such as checking the list of revoked cards before accepting the card. \*\*\*
>
> These slips are forwarded to the member bank which originally issued the card. The cardholder receives a statement from the bank periodically and may then decide whether to make payment to the bank in full within a specified period, free of interest, or to defer payment and ultimately incur an interest charge." *Harris Trust*, 21 Ill. App. 3d at 607-08.

Our courts have held that the issuance of a credit card and cardholder agreement is a standing offer to extend credit that may be revoked at any time. *Garber v. Harris Trust & Savings Bank*, 104 Ill. App. 3d 675, 679 (1982). When the cardholder makes a purchase, the bank advances funds to the merchant and this arrangement constitutes a loan between the bank and cardholder. *Harris Trust*, 21 Ill. App. 3d at 608. Therefore, each time the credit card is used, a separate contract is formed between the cardholder and bank. *Garber*, 104 Ill. App. 3d at 678.

### B. Whether Credit Card Agreement Is a Written Contract for Limitations Period

Plaintiff contends that the instant case is directly on point with *Harris Trust* and the trial court erred in failing to apply the 10-year statute of limitations. In *Harris Trust*, following a bench trial, the plaintiff was awarded judgment on its complaint for seeking money allegedly due on a credit card account for over four years. The only issue on appeal was whether the plaintiff's action was barred by the four-year statute of limitations under section 2—725 of the Uniform Commercial Code (UCC) (Ill. Rev. Stat. 1971, ch. 26, par. 2—725 (now see 810 ILCS 5/1—101 *et seq.* (West 2006))) for contracts for the sale of goods or the 10-year statute of limitations for written contracts. *Harris Trust*, 21 Ill. App. 3d at 606-07.

Following the analysis above, the *Harris Trust* court found that the UCC limitations period did not apply because the action was not for breach of a contract for sale, but a breach of the loan agreement between the plaintiff and the defendant. *Harris Trust*, 21 Ill. App. 3d at 608-10. The plaintiff assumed the risk that the defendant would not pay the debt and, thus, had no recourse against the merchant for the sale of goods. Therefore, the court held that the "plaintiff's cause of action was governed by the 10-year limitation applicable to written contracts, including promises to pay money." *Harris Trust*, 21 Ill. App. 3d at 610. Presumably because the cause of action was filed before five years from the date it accrued, the court did not consider the five-year limitations period for oral contracts in its decision.

Plaintiff asserts that from this language there can be no dispute that the 10-year period applies to an action to recover a defaulted credit card balance. Plaintiff adds that the *Harris Trust* court did not consider or mention the five-year limitations period for oral contracts. Plaintiff argues that this omission and the court's use of "applicable" indicate its use of discretion in including actions for defaulted credit card balances, whether based on an oral or written agreement, under the 10-year limitation.

Plaintiff argues that, as an Illinois case, *Harris Trust* is controlling precedent and overcomes the mere persuasive authority of the federal district court case argued by defendant. In *Parkis v. Arrow Financial Services, LLS*, No. 07 C 410 (N.D. Ill. January 8, 2008), the plaintiff sought certification of a class and brought suit against the defendant debt collector for proceeding on a collection beyond the statute of limitations period in violation of the federal Fair Debt Collection Practices Act. The plaintiff moved for summary judgment claiming the defendant's actions over six years from the date the action accrued were beyond the limitations period in Illinois. *Parkis*, slip op. at 2-7.

When the defendant acquired the alleged debt, it did not obtain documentation, such as monthly statements or the plaintiff's credit application. *Parkis*, slip op. at 2-3. The defendant alleged that it had sent 16 letters and made 73 calls to the plaintiff in attempts to collect the debt. However, the plaintiff denied receiving any collection communications from the defendant. The only exhibit attached to the defendant's complaint in the circuit court of Cook County was an affidavit of indebtedness executed by an account manager for the defendant. *Parkis*, slip op. at 3-5.

The *Parkis* court analyzed the plaintiff's claim under Illinois law. Although the parties did not dispute the existence of a contract, the court noted that there was no written instrument attached to the complaint and the defendant failed to attach an affidavit stating facts showing that such an instrument was unavailable as allowed under our Code of Civil Procedure. *Parkis*, slip op. at 15-16, citing 735 ILCS 5/2—606 (West 2006). The *Parkis* court opined that the affidavit of indebtedness was clearly not a written contract. Based on *Garber*, the court stated it was "unclear that even if an original credit card contract were available in writing, whether parol evidence would still be needed in order to make the contract complete." *Parkis*, slip op. at 17. However, the court rested its application of the five-year limitations period on the fact that no written contract was attached to the complaint. *Parkis*, slip op. at 17.

The *Parkis* court also continued its discussion by refuting the defendant's reading of *Harris Trust*, which mirrors plaintiff's argument in this case. The court rejected the argument that *Harris Trust* stood for a blanket application of the 10-year limitations period because all actions on credit card applications involve written contracts. The court found that *Harris Trust* considered the question of whether a credit card agreement was a loan contract or a sales contract—not whether the defendants sued on an oral or a written contract. *Parkis*, slip op. at 18. In any event, plaintiff attempts to

distinguish the instant case from *Parkis* because it had attached a copy of a signed application, copies of the cardholder agreement from 1998 and 1999, and several statements for defendant's account.

*Amici* for defendant also note that in a similar case, the federal district court followed *Parkis* in applying the five-year statute of limitations. *Ramirez v. Palisades Collection LLC*, No. 07 C 3840 (N.D. Ill. June 23, 2008). In *Ramirez*, on cross-motions for summary judgment, the court considered whether plaintiff's claim that the defendant debt collector's debt collection suit violated the Fair Debt Collection Practices Act as a deceptive practice because it was filed after the 5-year limitations period of section 13—205, or if the underlying suit was subject to the 10-year period of section 13—206. *Ramirez*, slip op. at 6. As in *Parkis*, there was no dispute over the existence of a contract and only an affidavit of indebtedness was attached to the complaint. *Ramirez*, slip op. at 7-8.

The *Ramirez* court followed *Parkis* in concluding that the affidavit did not constitute a written contract and "[t]he five-year statute of limitations plainly applies under Illinois law." *Ramirez*, slip op. at 10. The court noted that the defendant's assertion that the 10-year period applied was undermined by the fact that parol evidence would be required to determine its right to sue, whether the assignments of the contract were lawful, and whether the original terms were altered. *Ramirez*, slip op. at 9. Furthermore, the court held that the *Harris Trust* reasoning did not apply to the case because the issue addressed did not apply to all credit card agreements and did not consider whether section 13—205 applied. *Ramirez*, slip op. at 10-11.

Defendant maintains that the documents attached to plaintiff's complaint may be part of a contract, but they do not provide all the essential elements within the four corners of a document. Defendant argues that plaintiff admits that under *Garber*, the application form attached to the complaint is not a contract but it is a request to extend credit. Under *Garber*, no mutuality of obligation is formed until the cardholder accepts the card issuer's extension of credit by making a purchase. Defendant asserts that the application does not indicate if a credit card was issued or identify the terms of the agreement. As for the terms and conditions attached to the complaint, defendant notes that there is no indication that she agreed to them or that they applied to her alleged account. Defendant points out that between the application, two sets of terms and conditions, and the account statements, three different entities are listed as owner of the account. Furthermore, defendant argues that the attached terms and conditions are incomplete and, at best, a compilation of terms that cannot be considered a contract.

We reject plaintiff's broad reading of *Harris Trust* and agree that we must follow the persuasive authority of *Parkis* and *Ramirez* to reject plaintiff's claim that the 10-year limitations period applies. While the *Harris Trust* court did find that the 10-year limitations period and not the UCC limitations period applied in that case, it did so because it found that the plaintiff's action was not for a breach of a sale of goods, but breach of a loan agreement. In addition, the case involved an action that was filed less than five years from the date the action accrued. The *Harris Trust* court's silence as to the 5-year limitations period does not lead to the conclusion that all actions for defaulted credit card accounts fall under the 10-year period. Furthermore, there was no discussion in that case regarding whether the contract at issue was oral or written or any discussion regarding what documents were attached by the plaintiff in support of its contract claim.

Both *Parkis* and *Ramirez* flatly rejected plaintiff's exact argument. Similar to both of those cases, there is no dispute here that a contract is in existence, only whether a written contract exists. Even assuming the documents attached by plaintiff were in order, parol evidence would still be required to show all essential terms and conditions of the contract. Parol evidence would also be required to show the relationship between the parties and demonstrate defendant's receipt and acceptance of the essential terms.

■ We agree with plaintiff that the nature of credit card transactions and the relationships between the parties is complex and only made more difficult to analyze under modern realities. Despite the fact that no physical signatures are required for many transactions and the advent of electronic signatures and related legislation, we cannot escape the requirement of a written agreement and the recent analysis of that requirement by the *Parkis* and *Ramirez* courts. Any departure from this finding to account for modern business practices is a matter for the legislature, not this court. Accordingly, the contract at issue is considered to be an oral contract for purposes of the statute of limitations and the five-year period of section 13—205 applies.

## C. Other Evidence of Indebtedness in Writing

■ Alternatively, plaintiff argues that the credit card account statements attached to its complaint are other evidence of indebtedness in writing for purposes of section 13—206 and the 10-year statute of limitations. Plaintiff states that if an instrument may fairly be construed to contain a promise to pay or imply an obligation to pay and there is no need to resort to parol evidence to establish any essential elements, it is other evidence of indebtedness in writing. *In re*

*Estate of Garrett*, 24 Ill. App. 3d 895, 899 (1975). Plaintiff notes that the requirement that the essential elements within the writing establish liability means that the writing must be more than a link in the chain of evidence. *Garrett*, 24 Ill. App. 3d at 899. However, the specific transactions upon which the account is based need not be disclosed within the writing. *Ruettinger v. Schulman*, 293 Ill. App. 285, 288 (1938).

Plaintiff relies principally on *Garrett* for this contention. In *Garrett*, a paid promissory note was found in an envelope in the safety deposit box of the deceased. The envelope had, in the deceased's handwriting, a note that stated the deceased owed the claimants $5,000. The promissory note inside also had a note on the reverse side in the deceased's handwriting that indicated the deceased paid the note with funds from claimants and that he wanted the loan paid out of his estate. *Garrett*, 24 Ill. App. 3d at 896-97. The claimants filed their cause of action more than five years after it had accrued and argued that the note was other evidence of indebtedness in writing such that the 10-year limitations period applied. *Garrett*, 24 Ill. App. 3d at 897.

The Second District of this court agreed. Although not technically a written contract, the court found the document was "of a contractual nature" and of the same class of documents listed in the statute. *Garrett*, 24 Ill. App. 3d at 899. The court determined that the documents were complete by themselves and parol evidence was not required to determine the parties, the nature of the transaction, the amount in question or the intention to repay the debt. *Garrett*, 24 Ill. App. 3d at 899. Plaintiff asserts that the account statements in this case state the names of the parties, the amount owed, the interest rate for unpaid amounts, the name and address where to make payment, and the transactions that established the debt. Plaintiff argues that the obligation is implied by law under *Garber* and, under *Garrett*, the statements provide all of the essential terms of that contract.

Defendant argues that the statements are account summaries that only demand a minimum payment and allow dispute. As such, defendant claims that the statements are not other evidence of indebtedness in writing. Defendant asserts that the statements do not fall in the class of documents listed in section 13—206, such as bonds, promissory notes, bills of exchange or written leases or contracts. 735 ILCS 5/13—206 (West 2006). Defendant contends that under *Garber*, the alleged obligation arose when the card was used, not when the account statement was sent. She contends that the statements—if sent at all—were simply demands on this prior obligation and a link in the chain of evidence pursuant to *Garrett*. Defendant concludes that *Gar-*

*rett* supports her contention that statements of account do not constitute other evidence of indebtedness in writing because, as above, parol evidence is required to prove up the essential terms of the agreement.

Following this, defendant responds that plaintiff's attempt to distinguish this court's holding in *Toth v. Mansell*, 207 Ill. App. 3d 665 (1990), is unavailing. The *Toth* court approvingly cites *Garrett* for the proposition that a document must be of the same nature of the listed documents in section 13—206. *Toth*, 207 Ill. App. 3d at 670. However, unlike *Garrett*, the *Toth* court found that invoices and monthly statements from the plaintiff automobile and truck parts supplier were not sufficient to meet Illinois courts' strict interpretation of a written contract for statute of limitations periods.

The court held that the defendant's alleged promise to pay could be inferred, but not established, from the invoices. *Toth*, 207 Ill. App. 3d at 670. The court noted that "invoices or sales slips are routinely used for several purposes: to identify the sale and the articles sold, to identify the person making the sale, and to identify the person to whom the goods were delivered." *Toth*, 207 Ill. App. 3d at 670. Accordingly, the court found that the obligation arose from a previously executed oral contract. The court reasoned that parol evidence, such as plaintiff's rendering of statements to the defendant and the defendant's lack of objection, would be required to establish mutual assent and the defendant's promise to pay. *Toth*, 207 Ill. App. 3d at 670-71.

We agree that *Toth* is applicable to this case. As defendant also notes, in *Garrett* account statements were not other evidence of indebtedness because parol evidence would be required to prove all elements. The same holds true here as parol evidence would be required to establish mutual assent, defendant's promise to pay, and defendant's lack of objection.

Although only parenthetically cited by defendant, *Ramirez* also provides further support on this issue. In *Ramirez*, the court quickly dismissed this same argument by the collection agency, concluding it did not show the plaintiff's indebtedness to the collection agency, but only the credit card company. *Ramirez*, slip op. at 11-12. More importantly, the court added that it was uncertain whether parol evidence would be required to prove elements not defined in the account statement. Specifically, the court noted that statements typically do not provide terms defining default or other remedies or whether any terms may be changed or altered. Furthermore, the statements do not contain an affirmative promise to pay by the consumer. *Ramirez*, slip op. at 4.

This last point from the *Ramirez* court and the holding in *Garber* provide support for defendant's argument. The contractual relationship in this scenario is consummated when the cardholder makes a purchase. As noted in *Toth*, the credit card statements do not indicate proof of receipt or lack of objection and, without such information, require parol evidence to prove that essential element. Therefore, under *Garrett*, the statements are not complete agreements and are not considered written contracts.

## D. Composite Document Theory

■ Finally, plaintiff contends that the composite document theory is a "trend developing" in Illinois that allows a party to prove the existence of a writing through all documentation surrounding the transaction. As evidence of this trend, plaintiff cites one case from the Third District of our court and one from the United States Bankruptcy Court for the Southern District of Illinois. *Sears, Roebuck & Co. v. Conry*, 321 Ill. App. 3d 997 (2001); *In re Zurliene*, 97 B.R. 460 (S.D. Ill. 1989). Each of these cases utilized the composite document theory to prove the existence of a security agreement between the parties based on multiple documents.

Defendant responds that plaintiff waived this argument by failing to raise it before the trial court. *Daniels v. Anderson*, 162 Ill. 2d 47, 58 (1994). Waiver notwithstanding, we agree with defendant that plaintiff's claim that this theory is a developing trend is not warranted based on one Illinois case. More importantly, as defendant notes, the existence of a contract is not at issue in this case; rather, the issue is whether a written contract exists. As addressed above, for purposes of the statute of limitations, we follow a strict interpretation of the meaning of a written agreement. *Brown*, 147 Ill. App. 3d at 939. Accordingly, plaintiff failed to show all essential terms of the contract were ascertainable from the written instrument and the composite document theory is not applicable to this case.

## III. CONCLUSION

Accordingly, for the aforementioned reasons, the decision of the trial court is affirmed.

Affirmed.

THEIS and COLEMAN, JJ., concur.