SECOND DIVISION

No. 1-09-0556

| | | |
|---|---|---|
| LEONARD KRANZLER, | ) | Appeal from the |
| | ) |     Circuit Court of |
|     Plaintiff-Appellee, | ) |     Cook County |
| | ) | |
|     v. | ) |     No. 07 L 6809 |
| | ) | |
| LEWIS SALTZMAN, | ) | Honorable |
| | ) |     Dennis J. Burke, |
|     Defendant-Appellant. | ) |     Judge Presiding. |

**JUSTICE HARRIS delivered the judgment of the court, with opinion.**
Justices Karnezis and Connors concurred in the judgment and opinion.

OPINION

Plaintiff Leonard Kranzler loaned defendant Lewis Saltzman $100,000 upon the defendant signing a written "memo" that stated, "Loaned to Lewis Saltzman $100,000 to be paid back with interest." The defendant intermittently made payments that partially repaid the loan. Within 10 years of the date of the defendant's last payment on the loan, plaintiff filed suit in the circuit court of Cook County alleging the "memo" to be a promissory note and seeking judgment for the outstanding principal and interest. The trial court found in favor of plaintiff and against defendant, entering final judgment in the amount of $81,344.12 plus interest. Defendant then filed this appeal, claiming that plaintiff's complaint was time barred under any of three applicable statutes of limitations (810 ILCS 5/3-118(g) (West 2008), 735 ILCS 5/13-205, 13-206 (West 2008)). For the following reasons, we affirm.

JURISDICTION

The trial court entered a final judgment in the instant case on January 27, 2009, and defendant filed his notice of appeal on February 26, 2009. Accordingly, this court has jurisdiction pursuant to Illinois Supreme Court Rules 301 and 303 governing appeals from final judgments entered below. Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); Ill. S. Ct. R. 303 (eff. May 30, 2008).

BACKGROUND

On March 10, 1997, plaintiff Leonard Kranzler loaned defendant Lewis Saltzman $100,000. Defendant signed a typewritten "memo" on that same date that read as follows:

"Memo to: Leonard Kranzler                March 10, 1997

   Loaned to Lewis Saltzman        $100,000

to be paid back with interest.

/s/ Lewis Saltzman"

Between November 30, 1999, and July 5, 2005, plaintiff received intermittent payments on the debt totaling $74,500. The payments ceased after July 5, 2005, and on June 29, 2007, plaintiff filed a complaint in the circuit court seeking judgment for the outstanding principal due on the loan along with interest accumulated to date. On November 14, 2007, plaintiff filed an amended complaint that stated the same allegations as the first complaint and added a calculation showing that the sum of the outstanding principal balance on the "promissory note," plus all interest due and owing, totaled $160,241.38 as of October 31, 2007.

When defendant failed to respond to plaintiff's amended complaint, plaintiff sought entry of a default judgment against defendant, which the trial court entered in favor of plaintiff on January 16, 2008,

2

in the amount of $113,692.14. Defendant moved to vacate the default judgment within 30 days of the entry of default, and the trial court granted defendant's motion to vacate on March 13, 2008.

On the same date, defendant moved for a judgment on the pleadings pursuant to 735 ILCS 5/2-615(e) (West 2008), alleging that plaintiff's action was time barred by the statute of limitations provided by Article III of the Uniform Commercial Code as well as the 10-year statute of limitations for written contracts under 735 ILCS 5/13-206 (West 2008). The trial court denied defendant's motion on May 1, 2008, and allowed plaintiff to file a second amended complaint.

Plaintiff filed his second amended complaint on May 1, 2008. It reiterated plaintiff's allegations in the two preceding complaints and enumerated 15 separate payments that were made on the loan between November 30, 1999, and July 5, 2005. Exhibit B to plaintiff's second amended complaint included excerpts from a deposition taken of defendant in an unrelated matter in which defendant admitted that plaintiff had loaned him $100,000 and that he had requested that his company, Saltzman Printers Inc., make payments on the loan. In his answers to plaintiff's second amended complaint, defendant admitted that the 15 enumerated payments were made on the loan. In addition, in his response to plaintiff's first request for admissions, defendant admitted that he was president, director, and shareholder of SPI and that he had directed SPI to make the 15 payments to plaintiff in partial repayment of the loan.

On September 24, 2008, plaintiff moved for summary judgment, alleging that defendant owed him $115,797.65 plus per diem interest. The trial court entered partial summary judgment on the issue of liability in favor of plaintiff on December 5, 2008, and set a hearing to determine the amount of interest owed.

On January 27, 2009, the trial court entered a judgment against defendant and in favor of plaintiff in the amount of $81,344.12. The decision also called for postjudgment interest to accrue at the rate of 9% per annum. Defendant then filed this timely appeal.

### ANALYSIS

Defendant appeals from the trial court's judgment in favor of plaintiff and contends that the trial court erred in refusing to dismiss plaintiff's second amended complaint. We are not persuaded that the trial court erred.

First, we have considered which statute of limitations applies in the instant case. The parties point to three different statutes of limitations in their briefs: 3years for actions arising under article III of the Uniform Commercial Code (810 ILCS 5/3-118(g) (West 2008)), 5 years for actions on unwritten contracts and "all civil actions not otherwise provided for" (735 ILCS 5/13-205 (West 2008)), and 10 years for written contracts or "other evidences of indebtedness in writing" (735 ILCS 5/13-206 (West 2008)). The parties agreed during oral argument that the article III statute of limitations cannot apply because the document at issue here does not meet the requirements of a negotiable instrument. Defendant contends that the document was not a written contract and thus falls under the five-year statute of limitations for unwritten contracts. 735 ILCS 5/13-205 (West 2008). Plaintiff responds that the instrument contains all essential terms of a promise to pay and thus qualifies for the 10-year statute of limitations under section 13-206 (735 ILCS 5/13-206 (West 2008)). Which statute of limitations applies is a question of law that we review de novo. Travelers Casualty & Surety Co. v. Bowman, 229 Ill. 2d 461, 466 (2008).

We must first determine whether the document is merely a partial writing evidencing an oral

4

agreement or a complete writing containing all essential terms. Where the writings attached to the complaint do not contain the essential terms of the contract, even if the essential terms may be easily ascertained elsewhere, the contract is not written but oral. Clark v. Western Union Telegraph Co., 141 Ill. App. 3d 174, 176 (1986). But a writing is complete "when the language of the instrument may fairly be construed to contain a promise to pay money or contains facts from which the law implies a promise to pay, so long as parol evidence is not necessary to establish any essential elements." Toth v. Mansell, 207 Ill. App. 3d 665, 670 (1990) (finding that invoices, monthly statements, and ledgers did not constitute " 'other evidence of indebtedness' " because they could not establish the essential element of a promise to pay). When that writing is not simply a contract but also a promise to pay, then the writing constitutes " 'other evidence of indebtedness' " for the purposes of section 13-206 of the Illinois Code of Civil Procedure. Toth, 207 Ill. App. 3d at 670; In re Estate of Garrett, 24 Ill. App. 3d 895, 899 (1975) ("If the language of a writing may fairly be construed to contain a promise to pay money, or if the instrument states a fact from which the law implies an obligation to pay and there is no need to resort to parol evidence in order to establish any essential elements of the agreement forming the basis of the action, the instrument is within [section 13-206 (735 ILCS 5/13-206 (West 2008))] founded upon 'evidences of indebtedness in writing' "); see also Portfolio Acquisitions, L.L.C. v. Feltman, 391 Ill. App. 3d 642, 652 (2009) (determining that a credit card contract was oral because the plaintiff debt collection agency did not present as evidence a copy of the cardholder agreement between defendant and the issuing bank of the credit card and thus parol evidence was necessary to show the essential terms and conditions of that contract as well as the relationship between the parties and the defendant's receipt and acceptance of those essential

5

terms); Held v. Held, 137 F.3d 998, 1000 (7th Cir. 1998) (finding that a written letter submitted as evidence of an express trust was not "other evidence of indebtedness" because it did not contain all of the essential elements of a trust agreement).

The essential elements or terms of a promise to pay are: (1) the parties to the agreement, (2) the nature of the transaction, (3) the amount in question, and (4) at least a reasonable implication of an intention to repay the debt. In re Estate of Garrett, 24 Ill. App. 3d at 898. In Garrett, the Second District considered an instrument similar to the one at issue here. There the parties disputed whether a handwritten note discovered in the decedent's safety deposit box constituted written evidence of an oral contract or " 'other evidence of indebtedness.' " Garrett, 24 Ill. App. 3d at 897. One side of the piece of paper showed a paid promissory note in the amount of $5,000 and the other side held the handwritten note indicating that the claimant and a third person had lent decedent the funds to pay the promissory note and that decedent wished to repay the two men out of his estate. Id. The envelope containing this piece of paper also bore a note in the decedent's handwriting indicating that he owed the claimant and the third party each $2,500. Id. On appeal, the court concluded that the notes did not constitute a written contract because they lacked mutuality; there was no evidence that the claimant had known of their existence prior to the death of the decedent. Id. at 898.

However, the Garrett court found that "being of a contractual nature, the writings do constitute 'other evidences of indebtedness in writing.' " Id. The court reasoned:

"Whether an action is based on a written contract or on any other

evidence of indebtedness in writing, the action must be upon the writing

6

> and it is not enought [sic] that the evidence by which the cause of action is supported is in writing. [Citations.]
>
> The writings before us are not, however, mere evidence of a previous oral agreement. They are by themselves complete, thus eliminating the necessity of resort to parol evidence. The parties to the agreement, the nature of the transaction, the amount in question and, at least by reasonable implication, an intention to repay the debt are indicated therein. Accordingly, the writings come within the purview of [section 13-206 (735 ILCS 5/13-206 (West 2008))]." Garrett, 24 Ill. App. 3d at 898.

Thus, a written instrument evidencing a promise to pay qualifies as "other evidence of indebtedness in writing" for purposes of the 10-year statute of limitations so long as the writing contains all essential terms of a promise to pay. Id.

As in Garret, the instrument at the heart of the dispute in the instant case contains all of the essential elements of a promise to pay. First, the instrument names the parties to the agreement: plaintiff and defendant. Second, it clearly establishes the nature of the transaction. Plaintiff loaned money to defendant. Third, the amount in question is readily apparent: $100,000 plus interest. Finally, the instrument contains evidence of the debtor's intent to repay the loan. The instrument reads "to be paid back with interest" and is signed by defendant, the debtor. At the very least, this is a reasonable implication of defendant's intent to repay the loan. See id.

7

1-09-0556

Defendant contends that because the rate of interest is not specified in the instrument, parol evidence is required to establish the amount in question and thus the document does not contain all essential terms. However, defendant cites to no cases in support of this argument and we have not found any that would bolster his position. In addition, defendant contends that it is unclear from the face of the instrument exactly whom he should repay. This is a spurious argument when the instrument clearly states the person who loaned defendant the money, and defendant has not cited to any case law holding otherwise. See Ill. S. Ct. R. 341(h)(7) (eff. July 1, 2008); Dillon v. Evanston Hospital, 199 Ill. 2d 483, 493 (2002) (" 'A court of review is entitled to have the issues clearly defined and to be cited pertinent authority. A point not argued or supported by citation to relevant authority fails to satisfy the requirements of Rule 341([h])(7).' ").

Accordingly, we find that the instrument presented here constitutes "other evidence of indebtedness in writing" and thus falls within the purview of the 10-year statute of limitations in section 13-206 of the Illinois Code of Civil Procedure.

Now we must consider when that 10-year statute of limitations began to run in order to discern whether the instant action was timely filed. Defendant contends that the statute of limitations began to run the first day after the loan was made. **Plaintiff argues, on the other hand, that the statute of limitations began to run on the date of the last payment made on the debt, and we find plaintiff's argument persuasive here.**

Defendant cites to Kozasa v. Guardian Electric Manufacturing Co., 99 Ill. App. 3d 669 (1981), for the proposition that "[a] cause of action accrues and the statute of limitations begins to run when a

8

creditor may legally demand payment from a debtor." Kozasa, 99 Ill. App. 3d at 673. However, Kozasa does not hold that the statute of limitations begins to run the first day after a debtor makes a promise to pay, as defendant argues. Rather, the court found that when a debtor has been making payments on a debt, the statute of limitations begins to run not when the debtor threatens to stop making payments under the contract but instead when the next payment becomes due and remains unpaid. Id. In Kozasa the plaintiff had designed a relay used in electrical products and orally contracted with the defendant, an electronics component manufacturer, to arrange for an overseas supplier to manufacture the relays. Id. at 670-71. The parties entered into their oral agreement on November 16, 1967, and during December 1969 and January 1970 the defendant unilaterally attempted to alter the terms of the deal, culminating with sending the plaintiff a " 'final check *** under the old arrangement' " on January 19, 1970. Id. at 672. During this time, the defendant had been making periodic payments to the plaintiff under their oral agreement and only ceased this practice when it failed to make the scheduled February payment. Id. at 674. The court found that no breach of the contract occurred until defendant failed to make that scheduled payment and thus the statute of limitations began to run from the time of the breach, which was the first time that the plaintiff could legally demand payment from the defendant. Id.

Moreover, defendant's argument ignores the language of the applicable statute of limitations. As noted, section 13-206 states, "actions on *** other evidences of indebtedness in writing *** shall be commenced within 10 years next after the cause of action accrued; but if any payment or new promise to pay has been made, in writing, on any *** other written evidence of indebtedness, within or after the period of 10 years, then an action may be commenced thereon at any time within 10 years after the time of

such payment or promise to pay." (Emphasis added) 735 ILCS 5/13-206 (West 2008). Accordingly, when payments have been made on a debt instrument that qualifies as "other evidence of indebtedness in writing" under section 13-206, the statute of limitations begins to run from the date of the last payment made, even if 10 years had already run on the statute of limitations by the time of the last payment. See Krajcir v. Egidi, 305 Ill. App. 3d 613, 622 (1990) (finding that a plaintiff who filed his complaint within 10 years of the last payment made on a nonnegotiable promissory note had timely filed).

In the instant case, defendant signed the instrument on March 10, 1997, but plaintiff did not file his complaint until June 29, 2007. However, plaintiff's second amended complaint alleges that 15 payments were made on the instrument between July 1, 1997 and July 5, 2005. Although defendant denies in his briefs on appeal that he ever made such payments or caused them to be made, he admitted in his response to plaintiff's first request for admissions that during his tenure as president, director, and shareholder of SPI he caused SPI to make 15 payments on the instrument between November 30, 1999, and September 26, 2003. Any one of these payments would have been sufficient to trigger a new 10-year limitations period under section 13-206 and thus we find that plaintiff's complaint was timely filed.

CONCLUSION

Accordingly, for the foregoing reasons, we affirm the decision of the circuit court of Cook County.

**Affirmed.**

REPORTER OF DECISIONS - ILLINOIS APPELLATE COURT

LEONARD KRANZLER,

Plaintiff-Appellee,

v.

LEWIS SALTZMAN,

Defendant-Appellant.

No. 1-09-0556

Appellate Court of Illinois
First District, Second Division

January 18, 2011

JUSTICE HARRIS delivered the opinion of the court.

KARNEZIS and CONNORS, JJ., concur.

Appeal from the Circuit Court of Cook County.

The Honorable Dennis J. Burke, Judge Presiding.

Roderick F. Mollison, 205 North Michigan Avenue, 40th Floor, Chicago, IL 60601, for APPELLANT.

Adelman & Gettleman, Ltd., 53 W. Jackson Blvd., Suite 1050, Chicago, IL 60604, (Steven B. Chaiken, of counsel), for APPELLEE.

1-09-0556